### J. H. FLEMING ET AL. V. ELIZABETH GIBONEY.

No. 6898.

1. **Idem Sonans.**—We have no doubt that the names *John Giboney* and *John Gibney* should be regarded, as held by the court below, as idem sonans.

2. **Fact Case.**—See evidence *held* sufficient to support a judgment in favor of Elizabeth Giboney as widow of John Giboney for one-third of a league headright patented in name of John Gibney.

3. **Cases Adhered to.**—Burkett v. Scarborough, 59 Texas, 498, and McPhail v. Burris, 42 Texas, 142, adhered to.

APPEAL from Haskell. Tried below before Hon. John V. Cockrell.

*F. P. Morgan* and *Ed. J. Hamner*, for appellants.—1. To recover plaintiff must show absolute ownership of the land in suit. If she claims as an heir of the patentee she must show that the party through whom she claims was the party to whom the certificate and patent issued. Hooper v. Hall, 35 Texas, 82; Jones v. Jackson, 3 Texas, 305; Denison v. League, 16 Texas, 400; Walker v. Simpkins, 2 Texas Law Rev., 362; Paul v. Perez, 7 Texas, 338; Edrington v. Newland, 1 Texas Law Rev., 21; Pasch. Dig., art. 4167; Huff v. Webb, 64 Texas, 284; Blum v. Looney, 69 Texas, 5.

2. If the facts entitling plaintiff's husband to the certificate in question existed and he had possession of that certificate, it was her duty and in her power to allege and prove these essential facts, and failing to do so conclusively raises the presumption that they did not exist and could not be proved. Pasch. Dig., art. 4167; Const. of Republic of Texas, sec. 10, Pasch. Dig., p. 37; Pasch. Dig., art. 4159; Bailey v. Hicks, 16 Texas, 222; Ruppe v. Steinbach, 48 Mich., 465; Thompson v. Shannon, 9 Texas, 536; Gray v. Burk, 19 Texas, 228; Needham v. The State, 19 Texas, 332; Shackelford v. Wheeler, 7 Texas, 553; Howard v. The Republic, 1 Texas, 83; Blum v. Looney, 69 Texas, 5.

3. From the issuance of an unconditional headright certificate the presumption arises that the grantee, as required by law, presented himself in person before the board of land commissioners on the day it was issued to him, and the failure to prove the presence in this State of the party through whom plaintiff claims at a period after December 14, 1837, and prior to 11th of February, 1839, proves that he was not the grantee of the certificate by virtue of which the land in controversy was located, and therefore not the owner of said certificate nor the land. Every presumption is in favor of the grant. Jenkins v. Chambers, 9 Texas, 232; Willis v. Lewis, 28 Texas, 186; Land Comrs. v. Raguet & Logan, 2 Texas, 98; Pasch. Dig., art. 4129; Const. Republic of Texas, sec. 10, Pasch. Dig., p. 37; The State v. Casinova, 1 Texas, 402; Howard v. The Republic, 1 Texas, 83; Skidmore v. The Republic, Dall., 582; Lynn v. The State, 2 Texas, 317; Id., 266, 109; Hart. Dig., art. 1849; Land Comrs. v. Walling, Dall., 524; John v. The Republic, Dall., 621; Land Comrs. v. Riley, 3 Texas, 237.

4. John Giboney and John Gibney are not idem sonans, wherefore proof of title to land patented to John Giboney by virtue of certificate issued to John Giboney will not warrant a recovery of land patented to John Gibney by virtue of a certificate issued to John Gibney. Shields v. Hunt, 45 Texas, 425; McRee v. Brown, 45 Texas, 503; Faver v. Robinson, 46 Texas, 204; Golden v. Patterson, 56 Texas, 628; Railway v. Balloup, 1 Ct. App. C. C., 552; King v. Shakespeare, 10 East, p. 83; United States v. Wilson, Baldw. C. C. Rep., 83.

Counsel have not found a single case wherein a name of three syllables has been held idem sonans with a name of two syllables.

On sufficiency of proof: Stroud v. Springfield, 28 Texas, 672; Rivers v. Foote, 11 Texas, 662; Dalby v. Booth, 16 Texas, 565; Ayers v. Duprey, 27 Texas, 593; Hobby's Land Law, sec. 1647.

5. The law presumes that the certificate was properly issued to the party entitled to it, and the certificate is evidence that the grantee possessed the qualifications entitling him thereto. Blum v. Looney, 69 Texas, 5; Johnson v. Smith, 21 Texas, 722; Ruis v. Chambers, 15 Texas, 590; Byrne v. Fagan, 16 Texas, 391; Bowmer v. Hicks, 22 Texas, 155; Howard v. Colquhoun, 28 Texas, 134; McPhail v. Burris, 42 Texas, 142; Hobby's Land Law, sec. 1102.

*J. E. Preston* and *A. C. Foster*, for appellee.—1. Appellee did show by legal and competent evidence that the certificate by virtue of which the land was located was issued to her husband while they resided in Harrisburg County, Texas, and that she located the certificate and procured the patent, and was the legal owner of the certificate and the land at the time of the issuance of the patent to the land in controversy, and that neither she nor her deceased husband had ever sold either the certificate or the land. Montgomery v. Carlton, 56 Texas, 365; Hickman v. Gillum, 66 Texas, 314; Railway v. Stealy, 66 Texas, 468.

2. John Gibney and John Giboney are idem sonans. Railway v. Stealy, 66 Texas, 468; Townsend v. Ratcliff, 50 Texas, 148; Roth v. The State, 10 Texas Ct. App., 27; Hutto v. The State, 7 Texas Ct. App., 44.

3. The variance between the allegation in the petition in the name Giboney and the name in the certificate and patent Gibney is immaterial. Smith v. Shin, 58 Texas, 1; Waters v. Spofford, 58 Texas, 115; Hays v. Samuels, 55 Texas, 560; McClelland v. Smith, 3 Texas, 210; Fitch v. Boyer, 51 Texas, 336; Republic v. Young, Dall., 564; Couster, Robertson & Co. v. Thompson, 19 Ala., 717; Clay v. Holbert, 14 Texas, 189.

4. The law presumes that the certificate was properly issued to the party entitled to it, and the certificate is evidence that the grantee possessed the qualifications entitling him thereto. Blum v. Looney, 69 Texas, 5; Ruis v. Chambers, 15 Texas, 590; Johnson v. Smith, 21 Texas, 722; Byrne v. Fagan, 16 Texas, 391; Bowmer v. Hicks, 22 Texas, 155; Howard v. Colquhoun, 28 Texas, 134; McPhail v. Burris, 42 Texas, 142.

MARR, JUDGE, *Section A.*—Appellee, as plaintiff below, instituted this suit of trespass to try title against the appellants on the 4th day of February, 1888, to recover a certain tract of land of 1476 acres located and surveyed in Haskell County, Texas, by virtue of a headright certificate for one-third of a league of land, granted under the Constitution of the Republic of Texas, and issued on the 11th day of February, 1839, by the board of land commissioners of Harrisburg County to one John Gibney, upon proof that he was a single man and a resident of the Re-

public on the 2d day of March, 1836, etc.  The plaintiff claimed to have been the wife of John Giboney and his sole surviving heir at the date of his death, which occurred in the year 1857, and that he was the identical person to whom the certificate was granted, though it will be seen that there is slight variation in his name from that as given in the certificate.  The defendants deny the identity of John Giboney, the husband of the plaintiff, with the grantee of the certificate, and also claim the land through mesne conveyances and under a deed bearing date February 12, 1878, reciting a consideration of $2, and purporting to have been executed by one John Gibney to Barnes Parker, conveying to the latter the land in controversy.  But they offered no evidence whatever, outside of this deed and that afforded by the similarity of the name, of the identity of this John Gibney, who made the above deed, with the original grantee.  The cause was tried before the court without a jury and judgment was rendered in favor of the plaintiff.

The sole, or at least the controlling, question presented on this appeal is the sufficiency of the evidence to support the conclusion and the judgment of the court below, which in effect found that John Giboney, the husband of appellee, was in fact the party to whom the certificate was granted.

The following is a full summary of the evidence bearing on this issue:

By deposition the plaintiff testified, that she was 73 years old and knew John Giboney since she was a child.  He died in Grimes County, Texas, December 31, 1857, and had no children, and that she was his surviving wife and only heir.  John Giboney married plaintiff in Missouri August 9, 1838.  They lived together in Missouri until April 1, 1839, when they came to Texas and settled in Harrisburg County.  About December 1, 1839, they moved to Grimes County.  Plaintiff has lived in Grimes County ever since.  John Giboney received a headright certificate from the government of Texas for one-third league of land.  It was issued to John Giboney and for his benefit and his family.  He never sold it.  "I know that my husband John Giboney received a headright certificate from the government of Texas for one-third league while he resided in Harrisburg County.  My recollection is that said certificate was issued by the board of land commissioners of Harrisburg County to my husband John Giboney, and for his benefit and his family.  I know that he never sold it.  I know that the certificate for one-third league of land in my husband's name was located in what is now known as Haskell County, Texas.  The survey was made by John Isbell about May 25, 1854.  I do not, however, recollect the exact date.  I have Mr. Isbell's receipt for the certificate under which the survey was made; do not know the exact date of the survey.  Judge Jesse Grimes paid the patent fees.  Judge Grimes delivered the patent to me some time during the year 1859, and I held possession of the patent until I sent it to Haskell County for record about two years ago;

the patent after its record was returned to me. I turned it over to my attorney two or three months ago."

The patent and certificate to John Giboney were introduced in evidence. Mrs. Giboney also testified that her husband wrote a plain and legible hand. From an indorsement on the certificate it appears, however, that the surveyor, even, who located it spelled the name of the grantee as "Gibbeney."

J. B. Stevenson testified by deposition: "Formed John Giboney's acquaintance in Grimes County in 1844; knew him until his death in 1857. He had no children. John Giboney was entitled to and received a certificate for one-third league. Don't know number or date of certificate, or by what authority it issued. Was co-executor with plaintiff in the will of John Giboney; made an inventory of the estate, which was appraised and filed in Probate Court of Grimes County. The certificate for one-third league of land referred to was placed on the inventory of said estate, and was in the name of John Giboney. The patent was issued to John Giboney. Don't know who located certificate, nor who paid patent fee or surveyor's fee. Mrs. Elizabeth Giboney was the owner of the land when the patent issued. John Giboney could write better than witness. It was not his custom to make his mark."

We do not see the bearing of this last fact, since there is no proof so far as we can discover that John Giboney or the grantee of the certificate ever signed his name by that method, either in the application for the certificate or in making the proof in support thereof or otherwise. There is no further evidence on the subject beyond this fact.

Rufus Grimes testified by deposition: "Knew John Giboney in Grimes County in 1848 or 1849, until his death in 1857. He resided in Texas during all this time. Don't know whether John Giboney was entitled to certificate or not. My father procured a patent to John Giboney to the land in question. Don't know number nor date of certificate. Understand that the patent procured by my father in favor of John Giboney in 1859 covers land in Haskell County. Have seen patent to one-third league in Haskell County. Don't know who located the certificate, nor who paid surveyor's fee. My father paid patent fee for John Giboney or his widow. Patent was delivered to her. When patent issued it was the property of John Giboney. He was a married man during the time I knew him. His wife was Elizabeth Giboney. They had no children. He could write a plain, legible hand; never knew him to make a mark in signing his name."

R. M. Hall, Commissioner of the General Land Office, testified by deposition, that a headright certificate was issued to John Gibney February 11, 1839, by board of land commissioners of Harrisburg County, for one-third league, which was located, and patent issued February 26, 1859. The field notes of the survey show that they were made by Wm.

Howeth, deputy surveyor of Cooke Land District. They were returned to the Land Office by J. H. Isbell. The survey was made May 20, 1856. Name in certificate is spelled Gibney. Patent issued to John Gibney; no transfer on file. The certificate recites that "John Gibney appeared before the board of land commissioners and proved according to law that he arrived in this country in the fall of the year 1835, and that he is a single man and entitled to one-third of a league of land." Certificate was filed in Land Office October 7, 1856. Original patent issued to John Gibney February 26, 1859.

The records of the Land Office disclosed the fact that only one certificate had ever been issued to either John Gibney or to John Giboney, and that is the one located on the land in controversy, and was issued in the name of John Gibney. We have no doubt that these names should be regarded, as held by the court below, as idem sonans, and the fact is entitled to some weight. Chandler v. Tarbox, 27 Texas, 144. That, however, does not determine the issue under the circumstances, but the question of identity still remains to be solved by the other facts pertinent to the inquiry.

The main facts relied on by the appellants as disproving the identity of John Giboney as the grantee and rightful owner of the certificate, as well as the chief basis of their contention, is indicated by the following proposition as stated by their counsel, viz.: "The certificate by virtue of which the land in suit was located was issued to John Gibney February 11, 1839, upon proof that he arrived 'in Texas in the fall of the year 1835, and that he is [was] a single man,' and resided in Texas March 2, 1836; whereas John Giboney, through whom plaintiff claims, did not arrive in Texas until April 1, 1839 (sixty days after the certificate issued), and was a married man from August 9, 1838, until his death in 1857, and could not have been entitled to any one-third league certificate."

These conclusions are drawn from the testimony of the plaintiff Mrs. Giboney and from the recitals in the certificate. She does not, however, say that her husband had not been in Texas previous to her marriage with him. She does not undertake to give the place of his residence prior to that time, except when they were both children. She does not seem to have been interrogated on that point, as probably should have been done; or if so, as the testimony was taken by deposition, her answers on that subject were not fully committed to writing. True, she testifies that she and her husband resided in Missouri until their removal to Texas in 1839, but from the connection in which this is stated it is evident, as we think, that she refers to their residence after the marriage, not his residence prior thereto. "We were married in Scott County, Missouri, August 9, 1838. We lived there until we moved to Texas and settled in Harrisburg County, *about* April 1, 1839." Such is the substance of her statement on this point.

The facts enumerated by the appellants in the above proposition are important only in the present controversy as affecting the question of the identity of the party to whom the certificate was in fact granted, but can not in this suit have the effect of defeating his right thereto, even if it should appear that he was not such a person as the government intended should receive a grant, or did not possess the necessary qualifications, residential or otherwise, to be under the law entitled to the certificate. The action of the board of commissioners in determining his right thereto exercised in the mode contemplated by law is final and conclusive of that question and is not the subject of collateral attack, and in this case both parties admit his right thereto by claiming under his title, but dispute as to his identity. Burkett v. Scarborough, 59 Texas, 498, and authorities cited; McPhail v. Burris, 42 Texas, 142. The date of the proof as made before the board of commissioners by the applicant for the certificate is not given. This must have been, or at least very probably was, some considerable time before the certificate was issued. Appellants contend that as John Giboney was married long before the certificate issued he would not have received a third of a league, but that, as he first came to Texas in 1839 (as they assert), he would only have been entitled as a married man to 640 acres of land. The quantity of land to which the grantee was entitled did not depend upon the date of the certificate nor the time when he made the necessary proof in support of his claim, but upon his status at the date of the declaration of independence, for we think that it must be evident from the certificate itself that it was granted under section 10 of the general provisions of the Constitution of the Republic, which gave to single men residing in Texas on the 2d day of March, 1836, the right to a third of a league of land, etc. The mode of establishing this right was provided for by the Act of December 14, 1837. Pasch. Dig., art. 4129, et seq.

We conclude from the recitals in the certificate, and from the fact that it was duly issued, that the grantee made the requisite proof before the land board that he "was actually a citizen of Texas at the date of the declaration of independence, and that he continued so to" the time of making the proof, and also "that he was a single man at the time of the declaration of independence," etc. Pasch. Dig., art. 4140. Consequently the facts that John Giboney was married in 1838, before the certificate had been issued, and that he was in the State of Missouri when he married and at the date of the issuance of the certificate (if conceded), and the further fact that the quantity of land granted was one-third of a league, do not necessarily prove that he was not the party to whom that certificate was issued, or that he was not all the while a citizen of Texas from "the fall of 1835." Of course if it should be conceded that he had never been in Texas until he arrived here with his wife and "settled in Harrisburg County about April 1, 1839," that

would afford almost conclusive proof that he was not the person to whom the certificate was granted, or at least intended for. But we are of the opinion that the evidence does not bear this construction, or anyhow that this interpretation is not the only reasonable one that may be put upon the evidence.

There is direct and positive testimony that he did receive this very certificate from the government, and that it was located for him on the land in controversy, and that the patent was procured for and delivered to his wife Mrs. Elizabeth Giboney after his death by Judge Jesse Grimes. The survey of the land was made a few months before the death of John Giboney, and the certificate was inventoried as a part of his estate. Under such circumstances, and considering the great age of the plaintiff at the time her testimony was taken and the consequent liability on her part to make mistakes in giving dates, etc., we agree with appellee's counsel that it is a fair inference from the facts in evidence that John Giboney had been a citizen of Texas prior to the time he brought his wife here in 1839. It is very probable, as suggested by counsel, that he went from Texas to Missouri for the sole purpose of consummating a previous engagement of marriage with the plaintiff, but with the intention of returning with his wife, which he did, animo revertendi. Before he went on this mission he may have made the necessary proof of his right to the certificate before the board of land commissioners, but the certificate was not immediately issued—perhaps not until after his return to Texas, if we may suppose that the plaintiff did not remember the exact day of their settlement in Texas. She does not, however, attempt to give the exact date. She says, "*about* April 1, 1839." If, therefore, this date is not the precise one, then John Giboney may have in fact returned to Texas before the certificate was issued, and thereupon established his right thereto in the mode provided by law, and thus obtained it after his return. The interval of time between the date of the certificate and the time of her arrival in Texas as fixed by Mrs. Giboney in a general way was less than two months, so their arrival may in fact have been before the issuance of the certificate. In any event we think that these deductions are permissible under the evidence, and that they are strongly corroborated by the fact that John Giboney did receive the very certificate under which the land in controversy was located. The evidence of his identity is much stronger and more satisfactory than that which was held to be sufficient by the Supreme Court to identify the original grantee in the case of Railway v. Stealey, 66 Texas, 468.

We can not hold, therefore, that the judgment of the District Court is without any evidence to support it, and conclude that it should be affirmed.

*Affirmed.*

Adopted June 16, 1891.