# TEXAS SUPREME COURT REPORTS.

## GALVESTON TERM, 1890.

---

### JAMES H. ROBERTSON v. A. H. DU BOSE.

#### No. 2724.

1. **Plea of Non Est Factum—Burden of Proof.**—Where defendant pleads *non est factum* to the deed under which the plaintiff claims, it devolves upon the plaintiff to prove by some of the modes of evidence of the common law the execution of the deed so attacked. It then devolves upon the defendant to support his plea with testimony to the forgery of the deed. The plea itself is not testimony, and where no testimony supporting the plea was introduced, *held*, to be error to submit the question of forgery to the jury.

2. **Identity—Name.**—Similarity of name ordinarily is sufficient evidence of identity of the person in a chain of title. In absence of any other testimony it is error to submit to the jury the question of such identity.

3. **Cases Adhered to.**—Chamblee v. Tarbox, 27 Texas, 144, and Cox v. Cock, 59 Texas, 524, adhered to.

4. **Recorded Instrument.**—On February 14, 1840, H. executed to W. an instrument in writing, which was duly proved by one of the subscribing witnesses, showing a sale of one-third of a league of land, located by W. in H.'s name (with description of the land) in Harris County. The original was filed in the General Land Office, December 13, 1859. A certified copy from the Land Office of said paper was duly recorded in Angelina County, October 22, 1883. October 22, 1842, a certificate for one-third league was granted to H. by the District Court of San Augustine County. This certificate was located upon the land in controversy in Angelina County. Patent issued for this land May 3, 1873. In suit by appellant, who held by deed made in 1887 from H., against the appellee, holding under W., *held*, that the certified copy of said deed of February 14 was competent as a recorded instrument, and was properly admitted in evidence.

5. **Right to Headright Could be Sold.**—A sale of his claim by one entitled under the Constitution of the Republic of Texas to a headright of land was valid, even if made before the issuance of the certificate.

6. **Sale of Land Includes Sale of Certificate under which Located.**—A sale of land includes a sale of the certificate under which it was located. The title to the land failing, the purchaser may relocate the certificate upon other lands. The lands so located would follow the ownership of the certificate.

7. **Same.**—As affecting the ownership of the certificate so conveyed with land held under it, it is of no consequence where the land was situated; that is, whether the land was situate in Harris or Harrison County would in no way affect the vendee's right to the certificate so passing with the sale of the land.

8. **Stale Demand—Right of Action.**—The date of a contract is not a material fact. The right to relief depends upon the lapse of time after the cause of action accrued.

9. **Case in Judgment.**—H., the original grantee of the certificate, sold to Walling in 1840. The land was located by Walling and claimed by his heirs. H. never made any claim until 1887, when he sold by quit claim deed to appellant. *Held*, that

as there had been no repudiation of the contract of sale before 1887, the rights of the Walling heirs and their vendee were not stale, nor barred by the statute.

10.   **Effect of Will.**—Upon the probate of a will devising land to several named persons their rights become fixed upon the probate of the will.   A failure of executors to act, or ineffectual acts, would not affect the rights of such devisees.

11.   **Agreement of Counsel Construed.**—An agreement by plaintiff and defendant herein " that the patent from the State of Texas to Caleb Holloway, herein filed, is common source of title, and may be used by either party to this suit," *held*, not to preclude the defendant from proving a conveyance to his vendor from Holloway, showing his (defendant's) connection with that title.   Any evidence tending to show who owns the land held by that patent, and by a right not conflicting with it, was proper.

12.   **Waiving of Notice of Filing Title Papers.**—An agreement waiving notice of filing title papers, and of showing for introducing copies by showing loss of originals, does not obviate objections to deeds not duly registered or otherwise properly proved.

13.   **Certificate of Comptroller Touching a Pensioner.** — Touching the issue of identity, a certificate from the Comptroller to the fact that a pension was issued, for what service, and residence when issued, is not competent.

APPEAL from Angelina.   Tried below before Hon. L. B. Hightower.

September 3, 1887, the appellant, James H. Robertson, who was the plaintiff in the court below, filed his original petition in an action of trespass to try title against the apppellee, A. H. Du Bose, who was the defendant below, in the District Court of Angelina County, Texas.

The appellee, A. H. Du Bose, answered by a general demurrer and a plea of not guilty.   He also pleaded over against the defendants Ann Walling, A. J. Walling, and C. M. Wilson, as his warrantors of the title of the land in controversy.   On January 9, 1888, the appellee filed an affidavit stating, in substance, that he believed the deed conveying the land in controversy to the appellant to be a forgery.

On July 21, 1888, the appellant filed his first supplemental petition, containing a plea of limitation and stale demand against appellee's title. To this plea appellee replied by general demurrer, special exceptions, and general denial.

The case was tried on these pleadings.   The tract of land in controversy is situated in Angelina County, Texas, and was located by virtue of a certificate for one-third of a league of land, which was issued to Caleb Holloway by the District Court of San Augustine County, on the 22d day of October, 1842.   The land was patented to Caleb Holloway on the 3rd day of May, 1873.   On the 5th day of July, 1887, Caleb Holloway executed a deed, with covenants of warranty, conveying the land in controversy to the appellant, James H. Robertson.

The appellee (defendant) claimed the land under a contract purporting to have been executed by Caleb Holloway on the 4th day of February, 1840, according to the terms of which said Holloway acknowledged that he had received the consideration for and had sold to one Jesse Walling 1476 acres of land in Harris County, a different tract of land from the one in

controversy, and agreed to make a conveyance of the said land to said Walling whenever a patent to it should be issued to the said Holloway. The title to the tract of land in Harris County having failed, Walling relocated the certificate upon the land in controversy, and his executors sold this tract in Angelina County to the appellee Du Bose.

On the 19th day of January, 1889, the case was tried before a jury. The plaintiff proved up the execution of the deed from Caleb Holloway to him by the subscribing witnesses thereto as at common law. Defendant offered no evidence on the issue of forgery raised by his affidavit. The verdict of the jury was as follows, to-wit: "We the jury find a verdict for the defendant." Upon this verdict, and the defendant's plea of not guilty, the court rendered judgment against plaintiff for the possession of the land in controversy, quieting defendant's title thereto. Plaintiff's motion for a new trial was overruled, and he appealed.

*W. J. Townshend* and *Robertson & Williams,* for appellant.—1. The statements embraced in the Comptroller's certificate were facts contained in the papers and records of the Comptroller's office, to which the Comptroller could legally certify, and the facts contained in the certificate were relevant and material on the issue of the identity of the Caleb Holloway to whom the land was granted with the Caleb Holloway from whom plaintiff purchased; and if the issue of identity, or of forgery, was properly in the case, then the court erred in excluding the said certificate. Rev. Stats., art. 2253; Tolbert v. Dull, 70 Texas, 679; Holmes v. Coryell, 58 Texas, 680.

2. The plaintiff having proven up the due execution of his deed from Caleb Holloway as at common law, and the defendant having wholly failed to offer any proof to support his plea of *non est factum,* it was error for the court to submit in its charge to the jury the question of forgery, said question not being legally in the case. Cox v. Cock, 59 Texas, 524; Newby v. Haltaman, 43 Texas, 314.

3. The court erred in its charge to the jury in that it repeatedly instructed the jury that the plaintiff could not recover the land in controversy unless plaintiff had shown by evidence that the Caleb Holloway who executed the deed to plaintiff was the identical Caleb Holloway to whom the said land was patented, the question of the identity of said Holloway not being raised by the pleadings and that not being a question at issue in the case. Chamblee v. Tarbox, 27 Texas, 139; Muckleroy v. Bethany, 27 Texas, 551; Cox v. Cock, 59 Texas, 524; Hatcher v. Rochelau, 13 N. Y. Ct. App., 92; Jackson v. King, 15 Am. Dec., 470; Bogue v. Bigelow, 29 Vt., 183; Roden v. Ryde, 4 Ad. & E. L., N. S., 626.

4. The so-called transfer from Holloway to Walling was executed on the 4th day of February, 1840, at which time the certificate by virtue of which the land in controversy was patented had not been issued, and

Holloway had no right under the law as it then stood to procure the issuance of such certificate. The so-called transfer could not relate or convey a right, claim, or certificate which had no existence at the time of the execution of such transfer, and said transfer was irrelevant and immaterial. Sec. 10, Gen. Prov. Const. Republic of Texas, Pasch. Dig., p. 37; Pasch. Dig., arts. 4129, 4130–34, 4226; Linn v. The State, 2 Texas, 319; Trimble v. Smithers, 1 Texas, 797; Jones v. Menard, 1 Texas, 785 *et seq.*

5. When a plea of limitation and stale demand has been interposed against an equitable claim of title arising upon a contract for the conveyance of land which is more than forty years old, and the party offering such contract in evidence fails to excuse the long delay in seeking its enforcement, and upon its face the contract appears to be barred and the equities to which it might have given rise have become stale demands, it is error for the court, over the objections of the opposite party, to admit such contract in evidence. Wilson v. Simpson, 68 Texas, 308; Johnson v. Newman, 43 Texas, 628; Lewis v. Cole, 60 Texas, 341; Taylor v. Campbell, 59 Texas, 316; McFaddin v. Williams, 58 Texas, 625; Fleming v. Reed, 37 Texas, 152; Glasscock v. Nelson, 26 Texas, 150; Smith v. Hampton, 13 Texas, 459; Rev. Stats., art. 3209.

6. Plaintiff held the legal title, and defendant had, at most, only an equitable claim to the land in controversy, the enforcement of which had not been attempted for more than forty years from the time of its inception, and it was reversible error for the court to refuse plaintiff's request to charge the law applicable to the issues of limitation and stale demand as presented in this case by the pleading and evidence.

7. The will of Jesse Walling, deceased, appointed Ann Walling, A. J. Walling, and C. M. Wilson as joint independent executors thereof, and the evidence showed that all three of them were acting as such, and it was necessary to the validity of a conveyance of lands belonging to the estate of said decedent that all three of the said executors should join in the execution and acknowledgment of such conveyance. Rev. Stats., art. 1937; Langley v. Harris, 23 Texas, 569; Hart v. Rust, 46 Texas, 556; McLane v. Belvin, 47 Texas, 493; Blanton v. Mayes, 58 Texas, 422.

8. Where it is sought to defeat the legal title to land by an equitable title prior in point of time, it is incumbent on the party asserting the prior equitable title to prove the payment of a valuable consideration therefor, and to show a want of equity in the legal title which he is attacking by proving either that no consideration was paid therefor, or that the holder of such legal title bought with notice of the equity which is being asserted against him. Johnson v. Newman, 48 Texas, 628; Wimberly v. Pabst, 55 Texas, 587; Bremer v. Case, 60 Texas, 151; Hill v. Moore, 62 Texas, 610.

J. D. *Gann*, for appellee, cited Johnson v. Newman, 43 Texas, 638;

Martin v. Parker, 26 Texas, 259; Babb v. Carroll, 21 Texas, 765; Emmons v. Oldham, 12 Texas, 26; Smithwick v. Andrews, 24 Texas, 488; Hines v. Thorn, 57 Texas, 104; Bragg v. Lockhart, 11 Texas, 163; Kinney v. Vinson, 32 Texas, 127; Hooper v. Hall, 35 Texas, 83; Dailey v. Starr, 26 Texas, 562; Crabtree v. Whiteselle, 65 Texas, 111.

HENRY, ASSOCIATE JUSTICE.—This was an action of trespass to try title, instituted by appellant to recover one-third of a league of land patented to Caleb Holloway.

The defendant pleaded "not guilty."

Appellee filed an affidavit charging that a deed for the land from Caleb Holloway to appellant was a forgery.

Appellant, by supplemental petition, pleaded that defendant's equitable title was a stale claim.

A certificate was issued in favor of Caleb Holloway by the District Court of San Augustine County on the 22d day of October, 1842.

It was located on the land in controversy, which was patented to Caleb Holloway on the 3d day of May, 1873.

On the 5th day of July, 1887, said Holloway conveyed the land to James H. Robertson, the appellant.

Appellee claimed the land under conveyances to him by the executors and heirs of Jessee Walling, to whom, he contends, the equitable title to the land certificate was conveyed by the following instrument, which we copy from the brief of appellant:

" *Republic of Texas, County of Nacogdoches, this the 4th day of February, 1840.*—Be it none [known] that I Caleb Holloway has this day sold to Jesse Walling all of the one-third of a league of land which was located by said Walling in the year thirty-five in my one [own] name, now ling [lying] and being in Harris County about ten miles from the lake, and joins a location made at the same time for Daniel Holloway and other, corners branded C H & the sale is for and in consideration of the sum of five thousand dollars, the receipt of which is hereby acknowledged and declared to be good and valid to said Walling his heirs and assigns forever from myself and heirs executors & forever in fee simple & the said land not being patented by this Government I will if necessary make further title as soon as said Walling obtains a patent in my name for said land. Said Walling is to pay all expenses to the Government & is to have full possession of the land and premises for the time being & all of which is agreed to before signing and delivering these presents, day and date first written." Signed Caleb Holloway, and proved for record by one of its two subscribing witnesses. It is endorsed: "Filed in G. L. O. Dec. 13–59. Refiled Oct. 24–70."

Plaintiff proved the execution of the deed of Caleb Holloway to him by the depositions of the subscribing witnesses. No evidence in support of

his plea of *non est factum* was offered by defendant. No evidence was offered tending to show that the Caleb Holloway who conveyed the land to plaintiff was not the identical person to whom it was patented.

Upon this branch of the case the court charged the jury as follows:

"The defendant Du Bose attacks the genuineness of said deed, purporting to be the act and deed of said Caleb Holloway, as a forgery, which throws the burden of proof upon the plaintiff to establish said deed as the genuine act and deed of the Caleb Holloway to whom said land was patented, and unless the plaintiff has so shown the said deed to be the act and deed of the identical Caleb Holloway, in whose name the patent to the land in dispute issued, he can not recover in this suit. He must, if he recovers at all, recover upon the strength of his own title to the land in question."

In another part of the charge upon the same issue the court used the language: "If you believe that the deed purporting to be the act of Caleb Holloway conveying the land sued for to James H. Robertson is the genuine act and deed of Caleb Holloway, the same person in whose name the patent to said land issued, then the plaintiff has established a legal title," etc.

Under this state of the case it is contended that the court erred in submitting at all the question of forgery to the jury, and also in charging as if any question of identity existed.

We think both objections are well taken, and that they require a reversal of the case.

In the case of Chamblee v. Tarbox, 27 Texas, 144, this court said that similarity of name alone "is ordinarily sufficient evidence of identity of a purchaser in a chain of conveyance." In the absence of evidence casting doubt upon the identity of a party to a conveyance of land, we think it ought to be held sufficient in every case, and the jury, if instructed upon the subject at all, ought to be told so.

In the case of Cox v. Cock, 59 Texas, 524, speaking of the effect of such an affidavit as the one filed by defendant in this case, this court said: "When the proper affidavit is filed attacking the deed offered in evidence as a forgery, such a deed can not be received in evidence without the usual proof of its execution; but when such proper proof is made it is not error to allow the deed to go to the jury as prima facie a genuine instrument. The impeaching affidavit has served its purpose. It has compelled the party claiming under the deed to prove its execution in accordance with the rules of evidence, and thus removed the suspicion cast upon it by the affidavit of forgery. It throws upon the shoulders of the party offering the deed the burden of proving its execution in accordance with the rules of the common law. If the party impeaching the deed desires to do so, he is at liberty to proceed to sustain, by any lawful testimony, his plea of *non est factum.* If he introduces no proof

whatever (the affidavit not being evidence), and the opposing party proves the making of the deed in accordance with some of the modes prescribed by the common law, the genuineness of the deed is established. The jury, in the absence of all proof sustaining the plea of *non est factum*, could not find otherwise." In this case they should have been so instructed.

In view of another trial, it is proper for us to dispose of a number of other questions presented by appellant's assignments of error. It is urged that the court erred in permitting the defendant to read in evidence a copy of the above described conveyance from Caleb Holloway to Jesse Walling.

The original instrument was filed in the General Land Office on the 13th day of December, 1859, already properly authenticated as a deed by one of the subscribing witnesses. On that point no question is made.

A copy of the instrument and its authentication, duly certified by the Commissioner of the General Land Office, was recorded in the deed records of Angelina County on the 22d day of October, 1883.

It is contended that said paper is not a duly recorded instrument; that it does not relate to the land in controversy, but purports to convey by metes and bounds an entirely different tract of land situated in a different county and not shown to be connected with the land in controversy; that on February 4, 1840, when said instrument was executed, Holloway did not have a right, under the law, to obtain the certificate by virtue of which the land in controversy was located, and such instrument could not relate to or convey a right which did not exist, and that if said instrument did relate to the land in controversy it could at best convey but an equitable interest in the land; and as the certificate by virtue of which the land was located was not issued until two years after the date of the instrument, said equitable interest had become stale and barred by the lapse of time, and plaintiff having pleaded limitation and stale demand, and defendant having failed to excuse his delay of over forty years in asserting any rights under said deed, it was not admissible in evidence.

It is evident that the right of Caleb Holloway to a grant of a third of a league of land had its origin in the Constitution of the Republic of Texas.

It is not unlikely, from what the record discloses, that he had a recognized right to acquire the same quantity of land under the colonial government, and that land had been surveyed for him, but that the title was not acquired because of its not having been perfected before the change of government and by his not taking afterwards such steps as were required to enable him to acquire title to the particular survey.

On the 4th day of February, 1840, he had a right given by the Constitution to select and own one-third of a league of land, but did not then have a certificate as the evidence of that right or a lawful survey anywhere. Was this right capable of being sold on that date? The ques-

tion is affirmatively answered by the case of Johnson v. Newman, 43 Texas, 639. In that case it is said: "Though at the date of this contract Mitchell had neither a title to the land in controversy nor to the certificate under which it has been acquired, still there was undoubtedly guaranteed to him by the Constitution the right to this amount of land on his complying with the requirements to be prescribed by law. This right, though neither real nor personal property *in esse*, was nevertheless an inchoate right to get that quantity of land out of some part of the public domain at the time and in the manner afterwards to be provided and determined by the government. It was a right or interest of such character as to be the subject of a contract."

Caleb Holloway holding a property in the right to acquire land that he could sell, did he convey it by the deed made by him to Jesse Walling?

This question is argued as if it depended upon the correct answer to two other questions, the first one being, Did the instrument convey the land that Holloway's certificate was then located on? And if it did, then, Did the sale of the land to Walling carry with it the title to the land certificate, when the title to that location failed because the land had been previously appropriated, and the certificate was floated and located on the land in controversy—an entirely different survey?

We think it is clear and well settled that under such circumstances a sale of the land would include a sale of the certificate, and that the title to the certificate would remain good and follow it to whatever land it might be subsequently applied.

In the case of Hines v. Thorn, 57 Texas, 102, this court said: "A legal sale of the land, by which it had been appropriated, would pass title to the claim or certificate by which it was thus appropriated." See Hearne v. Gillett, 62 Texas, 23.

. A contention exists in this case over the fact, whether the land referred to in the conveyance from Holloway to Walling was situated in Harris or in Harrison County. The evidence indicates that land that Holloway had caused to be surveyed under his colonial claim was situated in Harrison and not in Harris County, and that the land certificate when issued was first applied to that survey in Harrision County and was subsequently floated from that, because it was in conflict, to the land in controversy.

Appellee contended that the instrument was intended to convey the Harrison County survey, and not a different tract lying in Harris County, and in support of his contention introduced such items of evidence as a copy of the Harrison County field notes made in the year 1835, and a copy of an affidavit made by three persons in 1838, which seems to have been endorsed on a Land Office copy of said field notes, in which they say that they "were personally present when the survey of which the annexed is a certified copy from the General Land Office of this Republic for the land granted to Caleb Holloway as a settler or colonist was sur-

veyed by virtue of an order of survey issued by the Commissioner, George W. Smythe, for one-third of a sitio of land, and they further swear that the said survey was made according to law, and prior to the closing of the Land Office by the Consultation in the year eighteen hundred and thirty-five;" and also copies of memorandums appearing to be endorsements made on the files of papers in the Land Office, among other things containing mention of Harrison County, but none of Harris County. All of these copies of papers and of memorandums were duly certified to by the Commissioner of the General Land Office. The evidence was objected to by appellant.

We think that for the purposes of this case the question as to whether the land referred to in the conveyance was in Harris or in Harrison County, or where it was actually or was believed to be situated, or where it was described by the conveyance to be situated, is immaterial. No title to land anywhere was conveyed, and would not have been, however certain the description. The only effect that could be given to a conveyance of the land described would be to settle, or to help to determine by the relation that the land described bore to the certificate in question, whether the conveyance of the land carried with it, as an incident, the title to the certificate. If there existed no means of showing whether the certificate was conveyed but by the description or identity of the land conveyed, then the question what land was conveyed would be important, but even then important only for the purpose of determining whether the certificate was included.

If it is evident from the conveyance that it is intended to convey whatever land the certificate is applied to, that is all that is required.

Upon this issue we find no difficulty in the case before us. The one certain thing in the instrument, so far as the subject matter of the conveyance is concerned, is that it is his own headright claim for one-third of a league of land that Caleb Holloway is selling and conveying. Whatever imperfections of description of the subject matter of the conveyance may exist in other respects, there is no doubt about it in this, the only essential particular.

The objection that this instrument was not admissible in evidence because it was a copy and not recorded, is not tenable.

The original, as we have said, had been filed in the General Land Office, and was a proper record of that office. Rev. Stats., art. 3959.

It was the Land Office copy itself, duly certified to by the Commissioner, that was introduced in evidence. It is made evidence by article 2252 of the Revised Statutes.

The Land Office copy of the original instrument, including its authentication for record, was authorized to be recorded in the deed records of Angelina County by article 4330 of the Revised Statutes.

We think that there was no error committed in allowing this instru-

ment to be admitted in evidence, and that it would have been proper for the court to have instructed the jury that it had the effect of conveying Caleb Holloway's right to acquire from the Republic a third of a league of land, to be applied to the land wherever it might subsequently be or was then located.

The objection that the claim of defendant was stale was not a good ground for excluding the instrument from the jury as evidence.

The same objection was more appropriately raised by the pleadings and by charges requested by appellant and refused by the court.

In the case of Hodges v. Johnson, 15 Texas, 574, speaking of the doctrine of stale demand, it is said, "The date of the agreement is not a material circumstance."

The rule, as stated in the case of McKin v. Williams, 48 Texas, 92, is that the right to equitable relief is "dependent not upon the date of the contract, but upon the lapse of time after the cause of action accrued."

In the case of Reed v. West, 47 Texas, 240, Reed had contracted in 1836 to locate the claim of West in consideration of one-half of the land. The land was patented in 1855 to West. In 1868 the administrator of Reed sued the heirs of West for one-half of the land. Discussing the question of stale claim, Justice Gould said: "When patent issued the legal title vested in West or his heirs, in trust for the holder of the title bond to the extent of the locative interest.

"If West had then repudiated the trust by selling the entire tract or by holding possession, claiming for himself alone, then limitation would have commenced to run against the plaintiff's claim for equitable relief. Until some act indicative of an intention to hold adversely, limitation would not commence to run." See Gibbons v. Bell, 45 Texas, 417.

When the patent in this case issued to Caleb Holloway in the year 1873, he was invested with the legal title, in trust and for the benefit of his vendee, Jesse Walling. He did nothing to repudiate the trust, or that was inconsistent with the rights of Walling, until he sold the land to appellant in the year 1887.

Neither party was in actual possession, but the land was claimed by Walling, and specifically devised by his will in 1866, and taxes upon it were paid, and it was claimed and conveyed by his executors and heirs, without the assertion of any claim to it by Holloway until the year 1887, when he sold and conveyed it to appellant for the comparatively trifling consideration of $150, and while he went through the form of warranting the title that he was conveying, he declined to do that until he received from the agent of his vendee his written promise that the warranty was to be of no effect, and from one of the subscribing witnesses his opinion that the promise would neutralize the warranty. There being no repudiation of the trust until this sale, we think the doctrine of laches or

stale claim had no application until then, and even then the nature of the transaction was not such as to address itself to the favorable consideration of a court of equity, to which the pleading and charges under consideration are addressed.

The record shows that Jesse Walling died testate and that his will was duly probated. Ann Walling, A. J. Walling, and C. M. Wilson were named executors in the will without bond. It was an independent will. The record contains no affirmative evidence of the qualification of the executors or of the return by them of an inventory of the estate. The will was probated in 1867. It contained express mention of the Caleb Holloway tract as being then unpatented, and contained a clause devising (after the payment of the testator's debts, of which there is no evidence of the existence of any) "all of my (his) unpatented lands to be equally divided between J. T. Walling, Isom C. Walling, A. J. Walling, L. C. Walling, and Amelia A. Wilson, wife of C. M. Wilson."

The defendant, over the objections of plaintiff, read in evidence a deed purporting to be signed by the executors, conveying to A. J. Walling an undivided interest of 393½ acres in the Caleb Holloway survey, and reciting that the land was conveyed to him by them as executors "as his separate share of the land of said estate in Angelina County in the name of Caleb Holloway."

This deed was acknowledged for record only by C. M. Wilson and A. J. Walling, and the certificate of acknowledgment recites that they executed the deed "for themselves and for Ann Walling, at her request."

The record shows a power of attorney from A. J. Walling to William E. Rogers, authorizing him to sell and convey this land, and a deed from said Walling through his said attorney to the defendant, A. H. Du Bose, for the same land. No objection was made to the introduction of the two last named instruments in evidence.

The deed from the executors to A. J. Walling was objected to, and it is now insisted that there was error in allowing it to be read in evidence, for reasons that we do not deem it necessary to consider, as they can not affect the decision of this appeal or become of importance upon another trial of this cause in the court below.

The will of Jesse Walling unquestionably gives A. J. Walling an undivided interest in the Caleb Holloway survey. It only required the probate of the will to fix and confirm that right.

It was within the power of the executors, when they had properly qualified, to partition to him his exact interest.

If it was done by deed, in order for the deed to have effect as a deed it would have to be properly executed, and before it could be properly recorded it would have to be authenticated as the law directed. As the will itself invested him with an undivided interest in the land, he owned that when the will had been probated and when he conveyed to the defendant,

even if it be true that the executors never qualified, and never, from any cause, made a partition or a conveyance to him. Under any circumstances, we see no reason why the attempt to make the partition, even if it was ineffectual from any cause whatever, should not, after the long acquiescence in it by the parties interested in it, and especially when the objection does not come from them, be held valid and binding.

It is clear that the defendant acquired an undivided interest in the land by his purchase from A. J. Walling under the equitable title to it conveyed by the deed from Caleb Holloway to Jesse Walling. This equitable title is superior to plaintiff's legal title. If defendant does not own the whole of the equitable right, such interest as he does not own is still outstanding in others.

It has been held by this court in a number of cases that the defendant in an action of trespass to try title can not defeat a recovery by the plaintiff by proof of an outstanding equitable title with which he has no connection.

That doctrine has no application to this case. The equitable title conveyed to Walling relating to the whole land, and the defendant owning an undivided interest in it, he is so connected with the title that he is entitled to the full protection of it and to defeat a recovery of any part of the land by plaintiff.

This view of the law makes it unnecessary for us to pass upon the objections to this and other deeds introduced in evidence by the defendant, or to review the refusal of charges upon the same subject. We are of the opinion that the court did not commit error, as complained of, in refusing to give charges requested by the plaintiff.

Under the pleadings in this cause we think the only proper form of judgment, as between plaintiff and the defendant Du Bose, was that the plaintiff take nothing by his suit; and an affirmative judgment in favor of defendant for the recovery of the land and for being quieted in his possession thereof, as the judgment was entered, was not authorized and should not have been rendered. This is an error, however, for which we would not reverse this cause.

The record contains the following agreement between the attorneys of the parties: "It is agreed by plaintiff and defendant herein that the patent from the State of Texas to Caleb Holloway herein filed is common source of title, and may be used by either party to this suit. It is further agreed that either party in said suit may use as evidence on the trial of said cause original deeds and certified copies of deeds by filing the same in the papers in the case, without being required to account for the loss or destruction of the original deeds, and without the notice of filing required by law, so the deeds and copies are filed three days before the trial of said cause, subject to all other legal objections."

We think the court correctly decided that this stipulation did not pre-

clude defendant from proving the conveyance from Caleb Holloway to Jesse Walling, nor from showing his connection with that title.

Any evidence tending to show who owns the land held by that patent, and by a right not conflicting with it, was proper.

As to the admission in evidence of title papers, we think the only effect of the agreement was to relieve the party offering them from the requirement to give notice of their filing and from proving the loss of the originals when certified copies were used, giving to their deeds so filed the effect they would have had if the notice had been given and affidavit made of the loss of originals, and none other. The right remained to both parties to object to any deed because not duly registered or otherwise properly proved.

The plaintiff, on the issue of the identity of his grantor and the patentee, offered as evidence a certificate of the State Comptroller, showing that one Caleb Holloway was a volunteer in the Texas army in 1835, and the places of his residence at different dates subsequent thereto, and that he was when it was given a resident of Mitchell County, drawing a pension from the State. If the issue of identity was in question we do not think that such a certificate could be properly received as evidence. It was correctly excluded.

The judgment is reversed and the cause is remanded.

                                        *Reversed and remanded.*

Delivered February 4, 1890.